Haynes,, J.
This case comes into this court on appeal, and is an action brought for the purpose of euforcing certain, sewer assessments within the city of. Toledo.
'.The petition sets up that there was a sewer district within the cit.y 'of Toledo, called and denominated Sewer District' Number' 26. That sewer district lies in the westerly por-' tion of the city — perhaps abuts on the westerly line of the; city — and lies between Central avenue'and Auburn avenue’ and other streets named, being east of the Wagon Works,;; reaching over to Woodláwn cemetery, and extending in an' easterly direction over to Bancroft street and then following; along another street therein named, comprising a very large' sewer district; r ;
Proceedings were had in.the common council whereby it was ordered that there should be a main sewer constructed *291 within the district, commencing in the neighborhood of the Milburn Wagon Works and extending through certain streets and emptying into Ottawa liver or Ten Mile creek. The country around about this section is table-land, but as it approaches Ten Mile creek, it descends by rather an abrupt bank to the low grounds abutting upon the river. This sewer was'ordered to be constructed and contracts were let in due form according to law, the work was performed and a final estimate was made. That estimate was made upon the whole of this district, as we understand — at least it was ordered to be made upon the whole sewer district, and it is not shown that it did not cover the whole sewer district, it included, however, in this district the lands about which the controversy has arisen. These lands lie, a part of them, upon this high table-land, a part of them being — as is testified here — 'treated as acre-land, and a portion is the low ground adjoining the river or creek, and there is descending from these table-lands, at one point, a ravine running down to and into the low lands.
The contention of counsel for the defendants in this case is, that this property is not benefited by this main sewer, they claiming that it furnishes no drainage for the low lands, and practically no drainage for the high lands, or perhaps I should say that the high land, by virtue of ité elevation and the ravine, has already sufficient drainage.
The case was heard upon evidence. It was claimed that this sewer was simply a sewer for surface drainage; that the parties who owned the land and sold the lots in question had no right to drain into it or to use the sewer for house drainage; but we find upon examination of the testimony that this is not true. Under the statutes of the state, when the city desires to make drainage in a city, the matter is to be submitted to the board of health, and the board of health at first decided against allowing this use— the main sewer to empty into Ten Mile creek, but afterwards, upon a hearing. they allowed it to be so used until such time as tney should order another outlet to be built; so that so far as appears at present, the sewer is used for all of the purposes of a sewer — for surface drainage, and for bouse drainage also.
It is claimed that it is impossible to drain many of these lands and lots into this sewer, and the statute is invoked *292 which provides that where lots and lands cannot be drained, or where they have sewerage already provided, no assessment can be made. But, without discussing this matter to any length, we think counsel for defendants have, as we understand their arguments at least, taken an erroneous view of these assessments. It is not an assessment for local drainage, and is not attempted to be. The ordinance' does not'provide for anything of that kind: it is an assessment in a sewer district for the building of a trunk sewer through that district, an assessment which is ordered by the common council, and is an assessment upon ail the lands within the district which are benefited for the purpose of building this sewer.- We have been cited to 45 Ohio State, and to the decision of the court in that respect, with regard to charging for local sewerage where there is a district sewer. That question does not arise here, for there is no attempt here to make an assessment for local sewerage. The statute referred to is section 2880: “The assessment shall not exceed the sum that would, in the opinion of the council, be re-quired to construct an ordinary street sewer, or drain, of sufficient capacity to drain or sewer such lots or lands; nor shall any lots or lands be assessed that do not need local drainage, or which are then provided therewith; and the excess of the costs, over the assessment herein authorized,shall be paid out of the sewer fund of the corporation;”' Now, that was the general statute. That is the statute under which the decision in 45 Ohio St., 407, proceeded, and which was construed. In that case there had been a sewer district made, and council bad attempted to assess for local drainage $2 per front foot, which it said was to be used for building the sewer. This sewer was located in the heights above Cincinnati; and forty years ago, there was a' creek passed by there, called Deer creek, and the parties to the suit had built upon these heights and at their own expense sewers into Deer creek, and their property had all the sewerage needed. That case decided that these lots could not be charged for local sewerage; that it must be paid out of the general sewerage fund. In all cities hut the city of Toledo, of which I know, a sewerage fund is provided under this general statute, by taxation — either by taxation upon the property in the respective sewer districts, *293 or upon the whole of the property within the city — that is to Bay, the money to make the trunk sewers and large sewers and the general sewerage, is raised either by general taxation upon such districts, or upon the whole city, the same as money is raised to sustain the fire or the water department of the city. But Toledo seems in municipal legislation to be always blessed with something peculiar to herself, She had this law amended, and in its terms it' applies, of course, to cities of the third grade of the first class, but, as that only covers Toledo, it is a local statute. Now it proceeds to say: “or in cities of the third grade of the first class, if the council so determine, may be assessed in addition to other taxes now authorized by law, on all Ine real property in the sewer district in which said sewer is or may be constructed according to benefits,’’ and it then proceeds to tell how to borrow money for the purpose of raising funds with which to build the sewer. It was. under this statute.that the council proceeded to order this assessment made upon the property within this sewer district.
Now, while it is said that it should be made according to benefits, and being called an assessment, it is treated as proceeding upon the same general principles as all assessments proceed, to-wit, because of the benefits which accrue to the property. Nevertheless, it is in substance's method of raising money for the purpose, of building a general trunk sewer in the sewer district, the same as is raised by a sewer fund in other cities, under the general statutes of the state. It is a tax upon the property in that district for the general purposes of a sewer, and it is to be sustained upon the sama principles that we sustain a tax for a fire department, or a tax for a water department, or a tax for a police department — the money is raised for sanitary purposes, for the protection of the health of the inhabitants of the city of Toledo, and every man who owds a foot of property in the city is interested in having sewerage of that kind — a general system, for the protection of the health of the city.
When they name to make this assessment, the parties who were appointed proceeded to make this general assessment, and they assessed upon this property which abuts upon the creek and through which this trunk sewer passes, a small Bum of money, Now, that trunk sewer, when, it *294 comes down out of this table-land, crosses this low land to the creek, and the bottom of the sewer there is not over eight or nine inches below the surface of the ground, and as it is a fifty-four inch sewer inside. Substantially the whole of the sewer lies above the ground,ihere is no question about that; but there is no attempt.to drain into it locally— it is not designed for local drainage. It is not expected that it will be drained into. The tax is made under that general provision that taxes the whole district for the general good of the property within the district..
P. A. MaoGahan. for Plaintiff.
S. A. Ford, C. F. Watts, for Defendants.
Of course, it is difficult to say just how much any of these lots or lands are benefited, but the assessors did proceed to make discriminations and assess some lands more than others, discriminating on account of the locality of the property and its relation to the sewer and the probable benefits of the sewer to the property assessed.
In regard to these assessments the law of Ohio has not been changed. This assessment was made by the city authorities, and made with reference to the special benefits which will accrue to the property. The finding of the assessing committee upon that point is conclusive upon this court, unless there is shown to be fraud or great oppression. Chat is decided in 34 Ohio St. Upon examination of i he facts of this case, we think these assessments are very fairly and justly made; that this court could not make any better if it should try. We think the plaintiff entitled to a judgment against these lands for the amounts respectively issessed, which are recited in the petition, and judgment will be entered accordingly.